Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARIANE REUTLINGER,<br><br>    Plaintiff,<br><br>v.<br><br>VIASAT, INC., MARK D. DANKBERG, RICHARD A. BALDRIDGE, JAMES BRIDENSTINE, ROBERT W. JOHNSON, SEAN PAK, VARSHA RAO, JOHN P. STENBIT, and THERESA WISE,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dariane Reutlinger ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is an action against Viasat, Inc. ("Viasat" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Viasat and Inmarsat.

2. On May 20, 2022, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

3. The Proxy Statement, which recommends that Viasat shareholders vote in favor of, among other things, the issuance of Viasat common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (1) Viasat's and Inmarsat's financial projections; (2) the financial analyses performed by Viasat's financial advisor, PJT Partners LP ("PJT Partners"), in connection with its fairness opinion; and (3) potential conflicts of interest involving PJT Partners.

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

9. Plaintiff is, and has been at all relevant times hereto, an owner of Viasat common stock.

10. Defendant Viasat provides broadband and communications products and services worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "VSAT."

11. Defendant Mark D. Dankberg ("Dankberg") is a co-Founder and Chairman of the Board of the Company.

12. Defendant Richard A. Baldridge ("Baldridge") is President, Chief Executive Officer, and a director of the Company.

13. Defendant James Bridenstine ("Bridenstine") is a director of the Company.

14. Defendant Robert W. Johnson ("Johnson") is a director of the Company.

15. Defendant Sean Pak ("Pak") is a director of the Company.

16. Defendant Varsha Rao ("Rao") is a director of the Company.

17. Defendant John P. Stenbit ("Stenbit") is a director of the Company.

18. Defendant Theresa Wise ("Wise") is a director of the Company.

19. Defendants Dankberg, Baldridge, Bridenstine, Johnson, Pak, Rao, Stenbit, and Wise are collectively referred to herein as the "Individual Defendants."

20. Defendants Viasat and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

21. On November 8, 2021, Viasat and Inmarsat announced that they had entered into a definitive agreement under which Viasat would acquire Inmarsat for $850.0 million in cash and approximately 46.36 million shares of Viasat common stock. The press release announcing the Proposed Transaction states, in pertinent part:

**Viasat and Inmarsat to Combine, Creating a New Leading Global Communications Innovator**

NEWS PROVIDED BY
**Viasat, Inc., Inmarsat**
08 Nov, 2021, 12:00 GMT

*- Accelerates Availability and Customer Choice for Broadband and IoT Services in Highly Competitive, Fragmented Global Markets*

*- Complementary Resources and Assets Create New Opportunities for Enhanced Growth and Innovation in Multi-band, Multi-orbit, Hybrid Space and Terrestrial Networks*

*- Increased Financial Strength and Resiliency Expected to Provide a Solid Foundation for Innovation and Capital Investment with Enhanced Free Cash Flow*

CARLSBAD, Calif., and LONDON, Nov. 8, 2021 /PRNewswire/ -- Viasat Inc., (NASDAQ: VSAT), a global communications company, and Inmarsat, a leading provider of global mobile satellite communications services, today announced they have entered into a definitive agreement under which Viasat will acquire Inmarsat in a transaction valued at $7.3 billion, comprised of $850.0

4

million in cash, approximately 46.36 million shares of Viasat common stock valued at $3.1 billion based on the closing price on Friday November 5, 2021, and the assumption of $3.4 billion of net debt.

*   *   *

**Transaction terms and financial highlights**
Under the terms of the agreement, Inmarsat's shareholders will receive $850.0 million in cash, subject to adjustments, and approximately 46.36 million newly issued Viasat shares valued at $3.1 billion, based on the closing price of $67.00 per Viasat share on November 5, 2021. At closing, on a pro forma basis, Inmarsat shareholders are expected to be issued shares representing an aggregate of 37.5% of Viasat stock on a fully diluted basis, with each of the existing Inmarsat shareholders receiving shares representing less than 10%.

The combined company's revenue and earnings profile is expected to be more diverse, resilient and global. Viasat estimates that the combined company has the potential for mid-teens percentage revenue and Adjusted EBITDA growth with a fully funded path to positive free cash flow, with upside from new IoT applications and greater utilization of global space assets.

This transaction is expected to deliver meaningful and enduring capital, operating and cross-selling revenue synergies, with operating and capital expenditure synergies alone expected to drive value creation of $1.5 billion on an after-tax NPV basis. In addition, both companies are nearing the end of unusually intensive capital investment cycles within the next 24 to 36 months and expect significant subsequent benefits from converging their respective architectures into a joint, high-performance global network.

**Financing overview**
Viasat has obtained financing commitments for $2.3 billion of new debt facilities required to complete this transaction, a portion of which is to be raised between signing and closing to fund Viasat's standalone growth expenditures. Viasat also plans to assume $2.1 billion in principal amount of Inmarsat senior secured bonds and $1.7 billion outstanding under Inmarsat's $2.4 billion of senior secured credit facilities. Viasat has also obtained commitments of $3.2 billion to backstop certain amendments required under Viasat's $700 million credit facility, $88.4 million outstanding under Viasat's Ex-Im credit facility and Inmarsat's $2.4 billion of senior secured credit facilities. Upon closing, the combined company is expected to have a fully funded path to generating positive free cash flow on a timeline substantially consistent with Viasat's previous standalone guidance. Assuming closing occurs during the second half of calendar year 2022, Viasat's pro forma net leverage ratio at December 31, 2022 is projected to be approximately 5.0x LTM Adjusted EBITDA and is expected to decline to less than 4.0x within 24 months thereafter.

**Leadership, governance and closing conditions**
The transaction has been unanimously approved by the boards of directors of both Viasat and Inmarsat. In addition, The Baupost Group, L.L.C., Viasat's largest shareholder, has agreed to vote in favor of the transaction. At the closing of the transaction, Viasat intends to expand its board of directors from eight to ten members, with Andrew Sukawaty, current chairman of Inmarsat, being appointed as one of the two new board members. A second new board member will be appointed at transaction closing by the current Inmarsat shareholders.

During the period prior to the closing of the transaction, Viasat expects members of Inmarsat's management team to continue to execute its strategy and provide leadership, in-depth industry knowledge and customer relationship support. Decisions regarding management of the combined company following the closing of the transaction will be made as part of the integration planning process.

The transaction is expected to close in the second half of calendar year 2022, subject to the approval of Viasat stockholders, the receipt of certain regulatory approvals and clearances and the satisfaction of other customary closing conditions.

**Advisors**
PJT Partners is serving as financial advisor to Viasat, provided a fairness opinion to the board of directors of Viasat, and is also serving as capital markets advisor, arranging the committed financing for the transaction. Latham & Watkins LLP and Linklaters are serving as legal advisors to Viasat. Barclays, J.P. Morgan Securities plc and Trinity Advisers are acting as financial advisors to Inmarsat. Kirkland & Ellis, Clifford Chance and Steptoe & Johnson LLP are serving as legal advisors to Inmarsat and its majority shareholders.

*   *   *

**About Inmarsat**
Inmarsat is a world leader in global, mobile satellite communications. It owns and operates the world's most diverse global portfolio of mobile telecommunications satellite networks, and holds a multi-layered, global spectrum portfolio, covering L-band, Ka-band and S-band, enabling unparalleled breadth and diversity in the solutions it provides. Inmarsat's long-established global distribution network includes not only the world's leading channel partners but also its own strong direct retail capabilities, enabling end to end customer service assurance.

Inmarsat has an unrivalled track record of operating the world's most reliable global mobile satellite telecommunications networks, sustaining business and mission critical safety and operational applications for more than 40 years. It is also a major driving force behind technological innovation in mobile satellite communications, sustaining its leadership through a substantial investment and a powerful network of technology and manufacturing partners.

Inmarsat operates across a diversified portfolio of sectors with the financial resources to fund its business strategy and holds leading positions in the Maritime, Government, Aviation and Enterprise satcoms sectors, operating consistently as a trusted, responsive and high-quality partner to its customers across the globe. For further information, follow us: Twitter | LinkedIn | Facebook | YouTube | Instagram.

**About Viasat**
Viasat is a global communications company that believes everyone and everything in the world can be connected. For more than 35 years, Viasat has helped shape how consumers, businesses, governments and militaries around the world communicate. Today, the Company is developing the ultimate global communications network to power high-quality, secure, affordable, fast connections to impact people's lives anywhere they are—on the ground, in the air or at sea. To learn more about Viasat, visit: www.viasat.com, go to Viasat's Corporate Blog, or follow the Company on social media at: Facebook, Instagram, LinkedIn, Twitter or YouTube.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22. The Proxy Statement omits and/or misrepresents material information concerning: (1) Viasat's and Inmarsat's financial projections; (2) the financial analyses performed by Viasat's financial advisor, PJT Partners, in connection with its fairness opinion; and (3) potential conflicts of interest involving PJT Partners.

23. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Our Board of Directors' Reasons for the Approval of the Transaction and the Stock Issuance; (ii) Recommendation of Our Board; (iii) Certain Financial Forecasts; and (iv) Opinion of Our Financial Advisor.

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Viasat's and Inmarsat's Financial Projections

25. The Proxy Statement omits material information concerning Viasat's and Inmarsat's financial projections.

26. With respect to Viasat's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) Viasat's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27. With respect to Inmarsat's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) Inmarsat's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

28. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Viasat and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

29. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable

method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

30. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning PJT Partners' Analyses

31. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by PJT Partners.

32. The valuation methods, underlying assumptions, and key inputs used by PJT Partners in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of PJT Partners' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

33. Without the information described below, the Company's shareholders are unable to fully understand PJT Partners' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 20, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

### A. Inmarsat's Analyses

34. With respect to PJT Partners' "*Selected Public Market Multiples Analysis*," the Proxy Statement fails to disclose the individual financial metrics of each selected company, including each company's adjusted total enterprise value and calendar year 2022 adjusted EBITDA.

35. With respect to PJT Partners' "*Selected Precedent M&A Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each transaction PJT Partners observed in its analyses.

36. The Proxy Statement fails to disclose the following concerning PJT Partners' "*Discounted Cash Flow Analysis*": (1) the terminal values of Inmarsat; and (2) the individual inputs and assumptions underlying the (i) perpetuity growth rate range of 0.5% to 1.5%, (ii) terminal value multiple range of 6.5x to 8.7x, and (iii) discount rates ranging from 7.5% to 8.5%.

### B. Viasat's Analyses

37. With respect to PJT Partners' "*Selected Public Market Multiples Analysis*," the Proxy Statement fails to disclose the individual financial metrics of each selected company, including each company's adjusted total enterprise value and calendar year 2022 adjusted EBITDA.

38. The Proxy Statement fails to disclose the following concerning PJT Partners' "*Discounted Cash Flow Analysis*": (1) the terminal values of Viasat; and (2) the individual inputs and assumptions underlying the (i) perpetuity growth rate range of 2.0% to 3.0%, (ii) terminal value multiple range of 6.8x to 9.6x, and (iii) discount rates ranging from 8.0% to 9.0%.

39. With respect to PJT Partners' analysis of Wall Street research analysts' share price targets for Viasat common stock, the Proxy Statement fails to disclose: (1) the individual price

targets observed by PJT Partners in its analysis; and (2) the sources thereof.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving PJT Partners

40. The Proxy Statement omits material information concerning potential conflicts of interest involving PJT Partners.

41. The Proxy Statement provides that, "[d]uring the two years preceding the date of its opinion, PJT Partners and certain of its affiliates advised [Viasat], certain affiliates of Inmarsat and certain affiliates of the Sellers, for which PJT Partners and its affiliates received or may in the future receive customary compensation."

42. Yet, the Proxy Statement fails to disclose the timing and nature of the past services PJT Partners and/or its affiliates provided Viasat, Inmarsat, and/or their affiliates, including the amount of compensation PJT Partners received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

43. The Proxy Statement also provides that "the transaction fee payable to PJT Partners may be increased in [Viasat's] sole discretion," but fails to disclose the circumstances and extent by which PJT Partners' transaction fee may be increased, and whether Viasat intends to increase PJT Partners' transaction fee, and if so, by what amount.

44. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

45. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the

total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

49. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and Stock Issuance.

50. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

# COUNT II
## Violations of Section 20(a) of the Exchange Act
## Against the Individual Defendants

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

56. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction and Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 24, 2022

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*